UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Center for Diagnostic Imaging, Inc.,

        Claimant,

vs.

ARJ II, LLC a/k/a Associated Radiologists of Joliet Investments II, LLC,

        Respondent.

FILED: AUGUST 4, 2008
08CV4394

Case No.:_____

JUDGE MANNING
MAGISTRATE JUDGE ASHMAN

JH

## COMPLAINT

Plaintiff Center for Diagnostic Imaging, Inc. ("CDI"), as and for its Complaint against Defendant ARJ II, LLC a/k/a Associated Radiologists of Joliet Investments II, LLC ("ARJ"), states and alleges as follows:

1. CDI is a Minnesota corporation with its principal place of business at 5775 Wayzata Boulevard, Suite 400, Minneapolis, Minnesota 55416. CDI operates outpatient centers for medical imaging and radiology.

2. ARJ is an Illinois limited liability company with its principal place of business at 1301 Copperfield Avenue, Suite 107, Joliet, Illinois 60432. ARJ is owned by radiologists that provide interpretations of medical imaging. All of the members of ARJ reside in Illinois.

3. Jurisdiction is based on 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and involves a dispute between citizens of different states.

4. Venue is proper under 28 U.S.C. § 1391(a) and (c), as the defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. In 2003, CDI and ARJ agreed to partner in the formation of a limited liability company, CDI Kankakee, LLC (the "LLC"), for the purpose of equipping and managing medical diagnostic imaging centers. CDI and ARJ memorialized their partnership agreement concerning the LLC in an Operating Agreement dated July 1, 2003 (the "CDI Kankakee Operating Agreement").

6. Though CDI owned fifty one percent (51%) of the LLC and ARJ owned the remaining forty nine percent (49%), the CDI Kankakee Operating Agreement required that CDI and ARJ jointly agree on all of the LLC major decisions.

7. At the same time as the execution of the CDI Kankakee Operating Agreement, the LLC entered into agreements both with Provena Hospitals, Inc. d/b/a Provena St. Mary's Hospital, d/b/a Provena Health ("Provena") for the LLC to equip and manage a medical diagnostic imaging center in Bourbonnais, Illinois (the "Kankakee Center") owned by Provena and with Associated Radiologists of Joliet, S.C. ("ARJ Radiologists") for ARJ Radiologists to provide professional interpretations services for the Kankakee Center.

8. Most of the owners of ARJ Radiologists are also the owners of ARJ, and all of the owners of ARJ are ARJ Radiologists.

9. From 2003 to 2008, CDI and ARJ worked collaboratively in managing the Kankakee Center. ARJ Radiologists received significant revenues performing professional interpretations services for the Kankakee Center.

10. In 2008, CDI and ARJ jointly agreed to sell their collective ownership in the LLC and entered into negotiations with Provena to sell the LLC to Provena.

11. Provena expressed that its best offer for the LLC consisted of the following material terms: (a) Provena would make a cash payment of $900,000; (b) Provena would allow CDI to collect the LLC's outstanding accounts receivable; and (c) CDI would agree to forgive all of the LLC's outstanding debt to CDI, which totaled in excess of one million dollars (the "CDI Debt").

12. Based on Provena's offer, CDI and ARJ discussed how the LLC's remaining assets would be split between them after the debts of the LLC were paid. Based on ARJ's 49% ownership in the LLC, following the repayment of the CDI Debt it was estimated that ARJ was only entitled to about $100,000 of the purchase price.

13. ARJ declined to accept that arrangement so, after further discussions and negotiations, CDI eventually agreed that ARJ would receive $250,000 in cash of the purchase price, and CDI would receive the remainder, but CDI was also required to retire the LLC debt to CDI.

14. In a letter to ARJ dated May 5, 2008 (the "May 5 Letter Agreement"), CDI endeavored to set out the terms of its agreement with ARJ with respect to the sale of the LLC. The letter states:

> [Y]ou asked for a letter agreement to document the final economic arrangements between Center for Diagnostic Imaging, Inc. ("CDI") and Associated Radiologist[s] of Joliet, P.C. ("ARJ") relative to the sale of CDI Kankakee, LLC (the "LLC") to Provena (the "Transaction"). As such, the purpose of this letter is to confirm and outline our mutual understanding related to our financial arrangement upon the purchase of all of the LLC's membership interests of CDI Kankakee, LLC (the "Membership Interests") by Provena.

> CDI has proposed and ARJ has accepted, that CDI take the risk on collection of the outstanding accounts receivable of the LLC, and will pay ARJ Two Hundred Twenty-Five Thousand Dollars ($225,000) upon closing of the Transaction as ARJ's share of the consideration for its Membership Interest. Furthermore, immediately prior to Closing, CDI will pay off the intercompany loan and will fully release ARJ from any guarantees or obligations for such debt. In exchange for the foregoing, ARJ agrees to approve the purchase offer made by Provena for the Membership Interest and further agrees to collaborate with CDI in its negotiations with Provena for the Membership Interest. Upon Closing, after ARJ is paid $225,000, CDI will receive the remaining amount of the cash purchase price paid by Provena for the Membership Interests and will retain the accounts receivables collected thereafter.

15. CDI and ARJ each signed the May 5 Letter Agreement.

16. In a follow up letter on May 15, 2008 (the "May 15 Letter Agreement"), at ARJ's request, CDI adjusted certain terms of the May 5 Letter Agreement. Specifically, the terms of the May 5 letter agreement were adjusted as follows:

> 1. The payment by Center for Diagnostic Imaging, Inc. ("CDI") will be made to ARJ II, LLC in the $225,000 upon closing of the purchase of CDI Kankakee, LLC by Provena. ARJ II, LLC has accepted the proposal outlined in my May 5 Letter.
>
> 2. ARJ II, LLC agrees to cooperate with CDI in its negotiation with Provena, and agrees that CDI may lead such negotiations on behalf of CDI Kankakee, LLC, upon the terms described in the May 5 letter.

The May 15 Letter Agreement concluded by asking ARJ to "indicate [its] understanding and agreement to the terms of the May 5 Letter, with the revisions herein" by signing the May 15 Letter Agreement and returning it to CDI, which ARJ did.

17. On June 2, 2008, CDI, ARJ and Provena entered into a Membership Interest Purchase Agreement. The Membership Interest Purchase Agreement provided that (a) CDI and ARJ would transfer all their membership interests in the LLC to Provena; (b) Provena would

4

18.     Paragraph 10.11 of the Membership Interest Purchase Agreement provided that is was the "entire agreement between the parties" with respect to the subject matter of the agreement.

19.     On June 3, 2008, as part of the closing, Provena wired the funds for the purchase of the membership interest of CDI Kankakee.  ARJ insisted that its $225,000 be wired directly to its account and the remaining $675,000 was wired to CDI's account.

20.     Following the sale of the membership interest to Provena, CDI learned that, without CDI's knowledge, prior to the closing ARJ had secretly negotiated a separate agreement with Provena that provided that, in exchange for ARJ's consent to consummate the sale of the LLC, Provena would make an additional $100,000 cash payment to ARJ (the "Side Payment").

21.     The Operating Agreement defines ARJ and CDI's respective obligations to each other in the event that either of them wish to sell or otherwise assign their membership interest to another person or entity.  Paragraph 14.2 of the Operating Agreement states:

> A Member may assign all or any part of such Members Membership Interest to a person not thereto for a Member in accordance with this Section 14.2 if (a) the assignor first gives written notice to the other Members and the LLC of the proposed assignment, giving the name, address and social security or tax preparer identification number of the proposed assignee *and describing the terms of the assignment*, (b) the proposed assignee executes a copy of this Agreement and agrees in writing to be bound by the terms hereof, (c) the assignment is approved in writing by all of the remaining Members, except that CDI shall have the right to assign all or any portion of its Membership Interest without such consent to an Affiliate of CDI or Provena St. Mary's Hospital, and (d) the assignment is permitted under Section 14.3 hereof.  Upon the satisfaction of these conditions and the

>  making of the assignment, the LLC will cause <u>Exhibit A</u> hereto to
>  be amended in accordance with Section 4.9 hereof and the assignee
>  will become a Member holding the Membership Interest so
>  assigned. (emphasis added).

22. ARJ did not disclose to CDI the Side Payment or the existence or terms of its side deal with Provena.

## COUNT I – BREACH OF CONTRACT (Letter Agreements)

23. CDI restates and realleges paragraphs 1 through 22 of the Complaint and relies upon each as if full set forth by this reference.

24. The terms of the May 5 and May 15 Letter Agreements provided that "after ARJ is paid $225,000, CDI will receive the remaining amount of the cash purchase price paid by Provena for the Membership Interests."

25. ARJ breached the terms of the May 5 and May 15 Letter Agreements by retaining the Side Payment.

26. As a result of ARJ's breaches of contract, CDI has been damaged in the amount of $100,000.

## COUNT II – BREACH OF CONTRACT (Operating Agreement)

27. CDI restates and realleges paragraphs 1 through 26 of the Complaint and relies upon each as if full set forth by this reference.

28. Paragraph 14.2 of the Operating Agreement requires ARJ to notify CDI of any proposed sale of its membership interest in the LLC by giving the name, address and social security or tax preparer identification number of the proposed assignee and describing the terms of the assignment.

29. ARJ breached the terms of the Operating Agreements by failing to disclose the Side Payment and the side transaction with Provena.

30. As a result of ARJ's breach of contract, CDI has been damaged in the amount of $100,000

## COUNT III – BREACH OF CONTRACT (Purchase Agreement)

31. CDI restates and realleges paragraphs 1 through 30 of the Complaint and relies upon each as if full set forth by this reference.

32. Paragraph 10.11 of the Membership Interest Purchase Agreement provided that is was the "entire agreement between the parties" with respect to the subject matter of the agreement.

33. ARJ breached the terms of the Membership Interest Purchase Agreement by entering into a side transaction with Provena relating to the sale of ARJ's Membership Interests in the LLC.

34. As a result of ARJ's breach of contract, CDI has been damaged in the amount of $100,000.

## COUNT IV – BREACH OF FIDUCIARY DUTY

35. CDI restates and realleges paragraphs 1 through 34 of the Complaint as if fully set forth by this reference.

36. ARJ misused its position as a member of the LLC to obtain a Side Payment that should have been distributed to CDI. As joint members in a closely held LLC, ARJ owed a fiduciary duty to CDI, which ARJ breached by its actions as described above.

37. ARJ's breach of its fiduciary duty to CDI has caused damage to CDI in the amount of $100,000.

### COUNT V – UNJUST ENRICHMENT

38.CDI restates and realleges paragraph 1 through 37 of the Complaint as if fully set forth by this reference.

39.ARJ, through its acts or omissions, obtained for its sole use and benefit a $100,000 side payment that should have been the sole property of CDI.

40.By entering into an illicit side agreement with Provena through which ARJ received a payment that should have been – but was not – shared with CDI, ARJ acted immorally, illegally and unjustly.

41.For the reasons outlined herein, if ARJ is not required remit the Side Payment to CDI, ARJ will be unjustly enriched.

42.CDI has been damaged by ARJ's actions in the amount of $100,000.

### COUNT VI – PROMISSORY ESTOPPEL

43.CDI restates and realleges paragraphs 1 through 42 of the Complaint and relies upon each as if fully set forth by this reference.

44.ARJ promised that it would disclose to CDI the terms of all assignments of its interest in the LLC; that its full compensation relating to the sale of its membership interests would be $225,000; and that it had only one agreement with Provena regarding the sale of ARJ's membership interest in the LLC.

45.CDI reasonably relied upon ARJ's promises and acted in reliance thereon.

46.ARJ breached its promises by secretly negotiating and receiving a $100,000 side payment from Provena for the sale of ARJ's membership interests.

47.As a result of the breach of promise, CDI has been damaged in the amount of $100,000.

## **COUNT VII – CONVERSION**

48. CDI restates and realleges paragraphs 1 through 47 of the Complaint as if fully set forth by this reference.

49. Without authorization, ARJ arranged to receive a $100,000 side payment from Provena in connection with the sale of the LLC. Those funds rightfully belong to CDI.

50. By exercising control over the funds that were rightly due to CDI, and taking those funds for its own benefit, ARJ committed conversion.

51. ARJ's conversion has damaged CDI in the amount of $100,000.

## **COUNT VIII – INTENTIONAL FRAUD**

52. CDI restates and realleges paragraphs 1 through 51 of the Complaint as if fully set forth by this reference.

53. In May 2008, John Tricou of ARJ expressly told CDI's COO, Tom Tomlinson, that any payments from Provena in excess of the $225,000 that CDI and ARJ agreed would go to ARJ, would go to CDI. That statement was false at the time it was made. In May 2008, at approximately the same time Mr. Tricou made this representation, ARJ entered into an agreement with Provena by which Provena would make a $100,000 side payment to ARJ.

54. ARJ intended that CDI rely on ARJ's false statement. CDI did reasonably rely on the false statement to its detriment.

55. ARJ has committed intentional fraud on CDI, which has damaged CDI in the amount of $100,000.

WHEREFORE, CDI prays for judgment against ARJ on all counts stated herein awarding CDI a money judgment in its favor and against ARJ in the amount of $100,000, together with an

award of CDI's costs and disbursements incurred in this action, pre- and post-judgment interest as permitted by law, and such other and further relief as this Court deems just.

        Respectfully submitted,

        CENTER FOR DIAGNOSTIC IMAGING, INC.

        */s/ Katherine A. Jones*
        Katherine A. Jones
        CHRISTENSEN & EHRET LLP
        222 West Adams Street, Suite 2170
        Chicago, Illinois 60606
        (312) 634-1014
        kjones@christensenehret.com
        *Attorneys for Plaintiff*

        Kelly W. Hoversten
        (MN Attorney No. 320419)
        GRAY, PLANT, MOOTY
        500 IDS Center
        80 South Eighth Street
        Minneapolis, Minnesota 55402-3796
        (612) 632-3000
        kelly.hoversten@gpmlaw.com
        *Attorney for Plaintiff*